**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ENTERTAINMENT SOFTWARE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) ) | No. _____ |
| vs. | ) ) | |
| CHICAGO TRANSIT AUTHORITY, | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Entertainment Software Association ("ESA"), by and through its attorneys, for its Complaint against Defendant Chicago Transit Authority, avers and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff is an association whose members include companies that create, publish, manufacture, distribute, and advertise computer and video games. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief against enforcement of an ordinance enacted by Defendant Chicago Transit Authority (the "CTA") that violates constitutionally protected rights of free expression of Plaintiff's members.

2. This action arises out of the CTA's adoption of new guidelines that govern the types of advertising messages permitted on its transportation system. Until recently, the CTA guidelines, which allow both commercial and non-commercial advertisements and generally invite all speakers to advertise on CTA vehicles and facilities, stated that only a narrow range of advertisements were "not permitted" to appear on CTA vehicles and facilities, such as ads depicting sexual acts, nudity, and graphic violence, and ads whose content was false, deceptive,

legally obscene, or directed to inciting imminent lawlessness. Those guidelines, as they existed prior to codification of the challenged Ordinance, are attached hereto as Exhibit 1.

3. The challenged ordinance, No. 008-147 ("the Ordinance") (attached hereto as Exhibit 2), amends the CTA's advertising guidelines to prohibit any advertisement on CTA vehicles and facilities that markets or identifies a video or computer game rated "Mature 17+" ("M") or "Adults Only 18+" ("AO") under the entertainment software industry's voluntary rating system. The Ordinance took effect on January 1, 2009.

4. The Ordinance constitutes a clear violation of the First Amendment rights of ESA's members to advertise on CTA vehicles or facilities. By prohibiting advertisements of video games with an "M" or "AO" rating from appearing on CTA vehicles or facilities, the Ordinance restricts speech in a public forum that is otherwise open to all speakers without a compelling interest for doing so. Moreover, by banning advertisements only for "M"- or "AO"-rated games – while allowing advertisements for similarly rated movies and television shows, in addition to magazines and books with similar content – the Ordinance impermissibly discriminates against certain speakers on the basis of viewpoint and is unreasonable. Thus, the Ordinance is unconstitutional under the First Amendment.

5. Plaintiff maintains that (a) the Ordinance is void and of no force and effect because it is unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States and thus actionable under 42 U.S.C. § 1983; and (b) Plaintiff's members are suffering immediate, serious and irreparable injury under the Ordinance.

**JURISDICTION AND VENUE**

6. This action arises under the Constitution of the United States, the First and Fourteenth Amendments thereto, and the laws of the United States, 42 U.S.C. §§ 1983 and 1988,

and 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343(a)(3).

7. This Court has personal jurisdiction over Defendant CTA under 735 ILCS 5/2-209(b) because CTA resides and does business in this District.

8. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) because Defendant CTA resides in this District, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

9. Plaintiff ESA is a nonprofit trade association organized under the laws of the State of Delaware with its principal place of business in the District of Columbia. A fundamental purpose of ESA is to serve and promote the business and public affairs interests of companies that publish entertainment software, including such companies' right to publish, distribute and advertise works of expression that are protected under the First Amendment to the United States Constitution. ESA members include a number of entities that publish, advertise, distribute, and/or supply video games directly to consumers and to owners and operators of sales and rental outlets within the city of Chicago and throughout Illinois. ESA members have advertised computer and video games rated "M" on CTA vehicles or facilities and intend to do so in the future, and these advertisements would be permitted under CTA's advertising regulations, absent the challenged Ordinance.

10. The interests that Plaintiff seeks to protect in this action are germane to the purposes of the organization, and neither the claims nor the forms of relief sought in this action require participation by Plaintiff's individual members. One or more members of the association have standing to bring this action in their own right.

11. Plaintiff's members are threatened with immediate, serious, and irreparable injury as a result of enforcement of the Ordinance. The Ordinance directly restricts the ability of Plaintiff's members to engage in constitutionally protected speech by advertising their games within the Chicago transit system. The Ordinance will also have a significant chilling effect on protected expression in the computer and video game medium by limiting the ability of creators and manufacturers to disseminate information about their products.

12. Defendant CTA is an independent municipal corporation created by state legislation, 70 ILCS 3605/1 *et seq.*, and is thus a state actor. Among other things, CTA maintains advertising space on Chicago's transit system and, through a sales agent, accepts a wide variety of commercial and public service advertisements. CTA's principal place of business is located at 567 W. Lake Street, Chicago, IL 60661.

## BACKGROUND

### Video Games and the ESRB Rating System

13. Computer and video games are a form of artistic expression and, like movies, books and music, are protected by the First Amendment. The computer and video games at issue typically involve complex storylines, and contain hours of cinematic narrative content similar to that of animated films. Video game reviews are a regular feature in the entertainment section of many leading magazines and newspapers, including Newsweek, the New York Times, and the Chicago Sun-Times. The Seventh Circuit and this Court have held that video games, including those containing depictions of violence and non-obscene sexual content, are entitled to the full protection of the First Amendment. *American Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001) ("*AAMA*"); *Entertainment Software Ass'n v. Blagojevich*, 404 F. Supp. 2d 1051 (N.D. Ill. 2005), *aff'd* 469 F.3d 641 (7th Cir. 2006).

4

14. The Entertainment Software Rating Board ("ESRB") is a private self-regulatory body formed in 1994 by ESA. ESRB independently assigns age and content ratings to video games that are voluntarily submitted for rating by game publishers. While the submission of any video game to the ESRB for rating is voluntary, the leading game console manufacturers will not permit games to be published on their systems unless they have an ESRB rating, and most major retailers will not stock games unless they have an ESRB rating.

15. The ESRB rating for a video game consists of a symbol and one or more content descriptors. There are six age-specific rating symbols: EC (Early Childhood); E (Everyone); E10+ (Everyone 10+); T (Teen); M (Mature 17+); and AO (Adults Only 18+). There are also 30 content descriptors that are used to indicate elements in a game that may have triggered its particular rating. Content descriptors that may be assigned to a game include "Cartoon Violence," "Mild Lyrics," "Crude Humor," "Fantasy Violence," "Mild Violence," and "Strong Language." As illustrated below, ESRB-rated games must clearly display the assigned rating icon and content descriptors on game packaging and in advertising and marketing materials.



16. "M"-rated games are those containing content that the ESRB suggests may be suitable for persons ages 17 and older. Titles in this category may contain intense violence, blood and gore, sexual content and/or strong language. "AO"-rated games are games that the ESRB suggests should be played by persons 18 years or older. Titles in this category may include prolonged scenes of intense violence and/or graphic sexual content and nudity. The

5

ESRB intends its ratings to act as guidelines for consumers, especially parents, so that they may make informed decisions about the games they consider purchasing. The ratings are not designed to function as guidelines for government agencies to distinguish between permissible and impermissible speech for certain audiences.

### The CTA's Removal of "M"-Rated Video Game Advertisements and Enactment of the Ordinance

17. The events leading up to and including the enactment of the Ordinance demonstrate that CTA has impermissibly singled out computer and video game advertisements for censorship on its facilities in violation of the First Amendment.

18. On April 29, 2008, Rockstar Games, Inc., a wholly owned subsidiary of ESA member Take Two Interactive Software, Inc. ("Take Two"), released the critically acclaimed and best-selling video game *Grand Theft Auto IV*. Prior to the game's release, Take Two entered into contracts to advertise the game in various public places throughout the country, including on CTA vehicles and facilities. Complaint at 5, *Take Two Interactive, Inc. v. Chicago Transit Authority*, No. 08 Civ. 4244 (S.D.N.Y. 2008) (attached hereto as Exhibit 3).

19. On April 22, 2008, advertisements for *Grand Theft Auto IV* began appearing within the Chicago transit system. Attached as Exhibit 4 are true and correct copies of examples of the *Grand Theft Auto IV* advertisements that appeared on CTA facilities and/or vehicles. The advertisements feature depictions of one or more of the game's characters, accompanied by the game's title, release date, website and ESRB-assigned rating information, specifically the "M" rating icon and assigned content descriptors. The advertisements do not depict – nor do they even suggest – any violent or sexual themes. They promote a lawful product containing fully protected expression, and they are designed to inform the public, including adults who supervise what video games their children play, of the availability of the game. Further, the

6

advertisements had been approved and were in full compliance with the CTA's original advertising guidelines.

20. Soon after the advertisements first appeared, the CTA ordered that they be removed from the transit system. The removal occurred following a local television news report questioning the CTA's decision to allow advertisements for an "M"-rated video game given recent violent crimes in the Chicago area. (*See* Ex. 3.) According to contemporaneous media reports, a spokesperson for the CTA indicated that "the CTA made the earlier decision to remove the ads from the system following some violence in the city . . . . The CTA felt that, based on the circumstances, it was in the best interest of our customers to remove the ads and further review the circumstances." (Frank Caron, "CTA bans violent game ads following GTA IV debacle," *available at* http://arstechnica.com/gaming/news/2008/11/cta-bans-violent-game-ads-following-gtaiv-debacle.ars.)

21. On May 5, 2008, Take Two filed suit against the CTA in the Southern District of New York, alleging both breach of contract and constitutional violations. In September 2008, the parties entered into a settlement agreement, under which the CTA allowed a replacement campaign of Take Two's advertisements for *Grand Theft Auto IV* to run within the CTA transit system in November and December 2008.

22. On November 13, 2008, the Chicago Transit Board approved and passed the Ordinance, which amended the CTA's existing advertising guidelines by "prohibiting any advertisement on CTA vehicles and facilities which markets or identifies a video or computer game with an ESRB rating of 'Mature' or 'M' or 'Adults Only' or 'AO.'" (Ex. 2.) By its terms, the Ordinance became effective on January 1, 2009.

23. The content and timing of the Ordinance make it clear that CTA intended to single out video games for discriminatory treatment among all other forms of media, based on the CTA's unsupported and impermissible beliefs about these expressive works. The Ordinance was passed immediately after the CTA settled Take Two's lawsuit and took effect only after the replacement advertising campaign had concluded. The preamble to the Ordinance states that, "[a]ccording to an August 2008 Chicago Sun Times article at least 36 Chicago public school students have been killed since September 2007," cites a supposedly "demonstrable correlation" between violent video games and violent or aggressive behavior, and states that the CTA "has a substantial interest in ensuring that its assets and resources are not used to advertise violent video or computer games which may foster or encourage violent or aggressive behavior." (*See* Ex. 2.)

24. Based on these purported interests, the CTA acted to restrict *all* advertising for *any* computer or video games rated "M" or "AO," no matter how innocuous the content of the advertisements, while still allowing advertisements for similarly rated movies and television shows, as well as books or magazines that contain similar expressive material.

**The Ordinance Unconstitutionally Restricts Protected Speech in a Public Forum**

25. The restrictions on video game advertisements in the challenged Ordinance constitute a clear violation of the First Amendment. Video games, no matter what their rating, are lawful products that are themselves fully protected speech. Indeed, every governmental attempt to restrict the distribution of computer and video games to minors based on content has been struck down as an unconstitutional abridgement of protected speech. *See AAMA*, 244 F.3d 572; *Blagojevich*, 469 F.3d 641; *Blagojevich*, 404 F. Supp. 2d 1051; *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F. 3d 950 (9th Cir. 2009); *Entertainment Software Ass'n v. Swanson*, 519 F.3d 768 (8th Cir. 2008); *Interactive Digital Software Ass'n v. St. Louis County*,

329 F.3d 954 (8th Cir. 2003); *Entertainment Software Ass'n v. Foti*, 451 F. Supp. 2d 823 (M.D. La. 2006); *Entertainment Software Association v. Granholm* 426 F. Supp. 2d 646 (E.D. Mich. 2006); *Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180 (W.D. Wash. 2004); *Entertainment Merchants Ass'n v. Henry*, No. 06-675, 2007 WL 2743097 (W.D. Okla. Sept. 17, 2007).

26.     Defendant CTA has opened its vehicles and facilities to all speakers for use by the public as a place for expressive activity, and thus has created a public forum.  Indeed, the Seventh Circuit has long recognized that advertising spaces within CTA facilities, which the CTA has historically allowed to be used "for a wide variety of commercial, public-service, public-issue, and political ads," constitute a public forum.  *Planned Parenthood Ass'n v. CTA*, 767 F.2d 1225, 1232 (7th Cir. 1985).  Further, the ongoing policies and practices of the CTA also demonstrate that advertising is compatible with the primary use of the CTA's vehicles and facilities and that the CTA has established a public forum.  For example, the CTA has continued to accept a wide variety of advertisements, including those on potentially controversial topics.  (*See, e.g.*, Manya Brachear, *Atheist group brings mobile message to CTA,* Chicago Tribune, May 24, 2009, at C2 (describing provocative CTA advertising campaign by religious group); Mary Laney, *Editorial,* Chicago Sun-Times, May 5, 2003, at 39 (noting CTA advertisements for "Puppetry of the Penis" performance); *Ad is off Buses, but racy may ride again,* Chicago Tribune, April 1, 1994, at N2 (noting controversy regarding CTA advertisement "featur[ing] model Kate Moss in suggestive poses with a male counterpart")).

27.     By prohibiting advertisements of video games with an "M" or "AO" rating from appearing within CTA facilities, the Ordinance restricts speech in a public forum that is otherwise open to all speakers seeking advertising opportunities.  As such, it is subject to strict

9

scrutiny under the First Amendment, which places an extremely heavy burden upon the government to justify the restriction. Under strict scrutiny, the Ordinance is presumptively unconstitutional and must be invalidated unless the CTA could prove that it is necessary to serve a compelling government interest, that it is narrowly tailored to serve that interest, and that no less restrictive alternatives to achieving the CTA's interests are available. *Sable Communications v. FCC*, 492 U.S. 115, 126 (1989). The CTA cannot satisfy its burden as to any of those factors.

28. The CTA lacks any compelling interest remotely approaching the kind that could support its restriction on speech under strict scrutiny. The Ordinance cites a "substantial interest in ensuring that its assets and resources are not used to advertise violent video or computer games which may foster or encourage violent or aggressive behavior." (Ex. 2.) However, the Seventh Circuit has expressly rejected the notion that there is a compelling interest in directly restricting access to violent video games to minors, much less to all adults, and courts have recognized that there is no substantial evidence supporting the claim that exposure to video game violence increases violent or aggressive behavior. *See AAMA*, 244 F.3d at 578; *Blagojevich*, 404 F. Supp. 2d at 1074. It follows that there cannot be a compelling interest in denying CTA customers access to advertisements of these games.

29. The Ordinance also is not the least restrictive means of limiting access to violent video games. It ignores the possibility of counter-speech to increase awareness of the ratings, and it even bans advertisements of all games with an "M" or "AO" rating without regard for the fact that games may have been rated as such due to factors other than violent content, such as strong language, mature humor, or non-obscene sexual content. For these and other reasons, the Ordinance plainly fails to pass muster under strict scrutiny review.

30. The lack of fit between the Ordinance's restrictions on speech and the interest it was intended to serve indicates that the Ordinance also could not pass legal muster under the level of scrutiny applicable to restrictions on commercial speech. *See Central Hudson Gas & Electric Corp. v. Public Service Comm.*, 447 U.S. 557, 566-568 (1980).

**The Ordinance Unconstitutionally Discriminates by Viewpoint and is Unreasonable**

31. The Ordinance is also unconstitutional under the First Amendment because, by banning only advertisements for certain video games, it impermissibly discriminates against certain speakers on the basis of viewpoint and is unreasonable. The CTA may not restrict speech even in those facilities that are deemed non-public forums if the restrictions discriminate on the basis of viewpoint or are unreasonable in light of the purposes served by the forum. *See Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 806 (1985); *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 82 (1st Cir. 2004). A number of factors indicate that the Ordinance is a blatantly viewpoint-discriminatory and unreasonable restriction.

32. First, there is an extremely poor fit between the Ordinance's stated goal (*i.e.*, to discourage violent or aggressive behavior) and the means employed (*i.e.*, the ban on "M"- and "AO"-rated video game advertisements). The premise that exposure to the video games themselves (much less their advertisements) causes youth violence has been soundly rejected by the *AAMA* and *Blagojevich* courts, which examined and rejected the same research sources cited by the CTA as the basis of the Ordinance. *See AAMA*, 244 F.3d at 578; *Blagojevich*, 404 F. Supp. 2d at 1074. Indeed, the Ordinance itself cites only a "correlation" between exposure to violent video games and violent and aggressive behavior, not a causal relationship at all. Moreover, the Ordinance restricts not the games (which would itself be unconstitutional) but merely advertisements for the games even when the advertisements contain no depictions of

11

violence, and even though the advertisements are already subject to the ESRB's restrictions on advertisements seen by the general public. (*See* ESRB, "Principles and Guidelines for Responsible Advertising Practices," available at http://www.esrb.org/ratings/principles_guidlines.jsp.) And it restricts advertising to *all* viewers, including adults, in a misguided effort to protect minors from viewing such advertisements.

33. Further, by singling out video games but not the wide variety of other media that may contain violence or sexual content, including movies and television shows that are subject to similar voluntary rating schemes, the Ordinance is dramatically underinclusive. For example, the Ordinance permits advertisements for movies rated "R" (Restricted 17+) and television shows rated "TV-MA" (Mature Audience Only 17+) containing depictions of violence. As a result, a video game such as South Park, which was rated Mature with content descriptors for "comic mischief" and "strong language," could not be promoted on CTA vehicles and facilities, while advertising for its R-rated film and TV-MA television counterparts would be accepted under the Ordinance. This contrast illustrates that the Ordinance was not designed to curb violent behavior, but rather to serve the illegitimate purpose of discriminating against the particular viewpoint presented by video games.

34. CTA officials have also clearly indicated disapproval of video games rated "M" or "AO" by stating that "[t]he CTA made the earlier decision to remove the [*Grand Theft Auto IV*] ads from the system following some violence in the city," and citing the supposed correlation between violent video games and violent behavior in the text of Ordinance itself. (Frank Caron, "CTA bans violent game ads following GTA IV debacle," *available at* http://arstechnica.com/gaming/news/2008/11/cta-bans-violent-game-ads-following-gtaiv-debacle.ars.) These and other statements indicate that the Ordinance discriminates against

advertisements for certain games based on the CTA's view that minors should not play – or even be solicited to play – these games due to the specific message they express.

35. These and other factors plainly show that the Ordinance discriminates among speakers with regard to viewpoint and is unreasonable, and therefore impermissibly infringes on ESA members' free speech rights.

## COUNT I

### (First and Fourteenth Amendment - Freedom of Expression)

36. Plaintiff repeats and realleges the allegations of paragraphs 1 through 35 as if fully set forth herein.

37. The Ordinance unconstitutionally prohibits advertisements of video games rated "M" or "AO" on CTA vehicles and facilities. ESA members have placed advertisements and otherwise intend to place advertisements for "M"-rated video games that would be permitted by the CTA's advertising regulations absent the Ordinance.

38. The Ordinance restricts protected expression within a public forum and therefore is subject to strict scrutiny. The Ordinance clearly fails under strict scrutiny or any other level of scrutiny, because, among other reasons, the CTA fails to offer a compelling interest for imposing a restriction on protected expression, and the Ordinance is not the least speech-restrictive means of serving any such interest.

39. Further, the Ordinance discriminates among speakers with regard to viewpoint by singling out video game advertisements, and is unreasonable in light of the purposes served by the forum.

40. Therefore, the Ordinance is unconstitutional under the First Amendment to the United States Constitution, as applied to the State of Illinois by the Due Process Clause of the

Fourteenth Amendment to the United States Constitution. The Ordinance is causing Plaintiff's members to be subjected to the deprivation of rights, privileges, and immunities secured to it by the Constitution and laws of the United States. The Ordinance thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

41. Plaintiff is entitled to a declaratory judgment, injunctive relief, and its attorney's fees and costs, pursuant to 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands that this Court enter a judgment in Plaintiff's favor and against Defendant as follows:

(a) Declaring that the Ordinance is void and of no force and effect;

(b) Enjoining Defendant or its representatives from enforcing, or directing the enforcement of, the Ordinance in any respect;

(c) Awarding Plaintiff its attorneys' fees under 42 U.S.C. § 1988;

(d) Awarding Plaintiff its costs herein; and

(e) Granting such other general and equitable relief as the Court deems fit and proper.

Dated: July 22, 2009                    ENTERTAINMENT SOFTWARE
                                        ASSOCIATION

                                        By: ____/s/ David P. Sanders_____
                                              One of its Attorneys

David P. Sanders
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel. (312) 222-9350
Fax (312) 527-0484


Paul M. Smith
Katherine A. Fallow
Duane C. Pozza
Matthew S. Hellman
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC  20001
Tel. (202) 639-6000
Fax (202) 639-6066


Of counsel:
Kenneth L. Doroshow
Entertainment Software Association
575 7th Street, NW, Suite 300
Washington, DC 20004
Tel. (202) 223-2400
Fax (202) 223-2401